# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-1782V**
Filed: October 28, 2026

| | |
|---|---|
| NOELLE LYNN CZOPEK, *parent and natural guardian of* C.L.H. Jr., *a minor*, Petitioner, | |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | |

*Jason Luckasevic, Esq.*, Goldberg, Persky & White, P.C., Pittsburgh, PA, for petitioner.
*Ryan Miller, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On November 20, 2019, Noelle Lynn Czopek ("petitioner") filed the instant petition on behalf of her minor son C.L.H. Jr. for compensation under the National Vaccine Injury Compensation Program,[2] alleging that C.L.H. Jr. experienced heart failure and a subsequent heart transplant after receiving a measles, mumps, rubella, and varicella ("MMRV") vaccine on August 24, 2018. Petition, ECF No. 1. On October 3, 2023, the Court held an entitlement hearing. The Court issued its decision denying entitlement on June 23, 2026. ECF No. 83.

On August 14, 2026, petitioner filed a Motion for Attorneys' Fees and Costs. ECF No. 88. Respondent filed his response on August 28, 2026, stating that he "defers to the Court regarding

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.
[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

whether the statutory requirements for an award of attorneys' fees and costs are met in this case" ECF No. 89 at 2.

Petitioner's Motion for Attorney Fees requests a total of $132,080.58, representing $104,437.50 in attorneys' fees and $27,643.08 in costs. ECF No. 88 at 2. Respondent noted that "petitioner's counsel submitted numerous time and billing entries that were very inexact," including listing "a bulk number of hours, and a long time period over which they were worked, without giving exact dates or times for when the work was performed." ECF No. 89 at 4 n.3. Respondent raised that "[t]he way such entries were submitted does not appear to be adequately precise to enable evaluation of their reasonableness or accuracy." *Id.*

After consideration, petitioner's motion is **GRANTED in part**.

## I. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 372-73 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011).

## II. Discussion

As a preliminary matter, respondent has raised no specific objection to either the good faith or reasonable basis of this claim. The Court in this case ordered several rounds of expert reports and held an entitlement hearing. There is no evidence in the record that this case was not brought in good faith and, though petitioner was ultimately not entitled to compensation, at no point during the pendency of this matter was petitioner unreasonable in pursuing this claim. Therefore, I find that the statutory requirements of good faith and reasonable basis are satisfied.

### A. Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3] "*McCulloch* sets out the factors that are paramount in deciding a reasonable forum hourly rate within the Vaccine Program. These factors include Vaccine Act-specific experience, overall legal experience, the quality of the work performed, and reputation in the legal community and community at large." *Derr v. Sec'y of Health & Hum. Servs.*, No. 23-586V, 2026 WL 2151124, at *2 (Fed. Cl. Spec. Mstr. June 18, 2026) (citing *McCulloch*, 2015 WL 5634323, at *17). The Chief Special Master in *Derr* explained that these factors are applied in two steps. First, the special master should determine the number of years of experience the attorney has practicing law. This determines the appropriate tier of the Fee Rate Schedule to apply. Then, the remaining factors determine where in that tier the reasonable rate falls. "In setting the range for attorneys with comparable overall experience, 'higher rates [are] to be paid to those with significant **vaccine experience** who perform quality work in these cases.'" *Id.* (quoting *McCulloch*, 2015 WL 5634323, at *19).

Petitioner requests an hourly rate of $625 for work performed by attorney Jason Luckasevic during the years of 2018-2024 and 2026 and $125 per hour for work performed by paralegal Cynthia DeUnger during 2018 to 2020 and 2023. ECF No. 88-2. Mr. Luckasevic stated that he was admitted to the Pennsylvania Bar in 2000 and has been practicing as an attorney full time since then. ECF No. 88-1 at 1. Mr. Luckasevic noted that $625 per hour for an attorney is within the OSM Attorneys' Forum Hourly Rate Fee Schedule for 2026 for an attorney with his 18 to 26 years of experience. He also averred that he has been charging $625 per hour since at least 2020, though notably his work in this case began in 2018. Mr. Luckasevic also acknowledged that this is his first case in the Program. *Id.* at 1-2. He does not appear to be the attorney of record in any other pending cases before the Vaccine Court.

[3] The OSM Attorneys' Forum Hourly Rate Fee Schedules are available on the U.S. Court of Federal Claims website at OSM Attorneys' Forum Hourly Rate Fee Schedules | Court of Federal Claims | United States. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

While the years of experience noted in the OSM Attorney's Forum Hourly Rate Fee Schedule "refer to an attorney's years of experience practicing law, which generally will be calculated based on the year an attorney was admitted to the bar," special masters should consider several other important factors when determining a reasonable forum hourly rate. Among those "paramount" factors is "[t]he experience of the attorneys *in the Vaccine Program*." *McCulloch*, 2015 WL 5634323, at *17 (emphasis added). Mr. Luckasevic seems to have only consulted the 2026 Rate Fee Schedule in determining a $625 hourly rate. However, an appropriate hourly rate in the Program is adjusted over time to account for several factors including inflation. Each year's Rate Fee Schedule notes: "The schedule above applies to work performed for the calendar year" in which the work is performed. While $625 per hour is slightly above the midway point of the range provided for attorneys with 20 to 30 years of experience in practice for 2026, that rate far exceeds the maximum amount included in the 2018 Fee Rate Schedule of $455 for attorneys with even 31+ years of experience.

It would be inappropriate to award Mr. Luckasevic the high hourly rate requested from 2018 through 2023 and 2026 when such high rates either far exceed the maximums found in the Rate Fee Schedules for those years or are reserved for attorneys with significant experience representing petitioners in the Program. Therefore, based upon my experience applying the factors elucidated in *McCulloch* relevant to determining proper hourly rates for Program attorneys, I hereby award Mr. Luckasevic the following hourly rates:

| 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2026 |
|---|---|---|---|---|---|---|
| $325 | $335 | $398 | $422 | $433 | $464 | $560 |

The rate requested for Ms. DeUnger, the paralegal who worked on this case in 2018-2020 and 2023, of $125 per hour falls below the range provided for by the OSM Attorneys' Forum Hourly Rate Fee Schedule for each year and will be awarded.

**B. Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Hum. Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Hum. Servs.*, No. 08–756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of*

*Health & Hum. Servs.*, No 14–1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728–29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs*., 38 Fed. Cl. 403, 406 (1997) (same).

A review of the billing records shows entries that have been deemed unacceptable in Program causes for the following reasons. The majority of entries cover a range of dates and describe multiple vague tasks in a single entry. For example, Mr. Luckasevic billed 30 hours at a rate of $625 for the dates between November 20, 2018, and April 30, 2019, a five month period of time, for "*Case Preparation and Review:* Review of client's medical records, summary of medical records, research regarding injury and claims, meeting with clients to discuss claims, and researching medical articles." ECF No. 88-2 at 1. Counsel billed another 30 hours for a date range from September 1, 2023, to September 30, 2023, for "Review of all materials, preparation of client and expert for hearing, generation of client pre-hearing affidavit, conference with client regarding testimony, preparation of cross examination questions, overall preparation for hearing." *Id.* at 5. Additionally, some of the entries' dates overlap with one another, such as 30 hours ranging from November 20, 2018, to April 30, 2019, and another six hours between November 26, 2018, to October 18, 2019. ECF No. 88-2 at 1.

It is well established in the Program that block billing, meaning "[s]everal tasks grouped together in a single time-entry[,] makes it difficult to decipher the amount of time spent on each task and thus, the reasonableness of the request. Such billing practices are clearly disfavored in the Program." *Tan v. Sec'y of Health & Hum. Servs.*, No. 23-1566V, 2026 WL 1680598, at *2 (Fed. Cl. Spec. Mstr. May 8, 2026). The Vaccine Guidelines state: "Each task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request." Indeed, it is impossible to determine if counsel reasonably spent 30 hours over five months for no fewer than five separate tasks from a single entry. It would be merely problematic if this kind of billing occurred once or twice. But the entire billing record is irrevocably infected by these kinds of entries.

Additionally, some of the entries do not adequately match the descriptions of the work performed. Mr. Luckasevic billed nine hours on October 3, 2023, for "Vaccine Hearing before the Court." ECF No. 88-2 at 5. This is inaccurate. The transcript of the proceedings shows that the hearing was called to order at 9:00 AM and concluded at 12:50 PM. Tr. 4, 134. This is three hours and 50 minutes. Even assuming additional discussions occurred off the record, it is hard to see how Mr. Luckasevic spent nine hours performing "Vaccine Hearing before the Court."

Further, "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Hum. Servs.*, No 14–1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). "[C]ourts may reduce fee awards when an attorney bills time for learning the law." *Crespo v. Sec'y of Health & Hum. Servs.*, 139 Fed. Cl. 231, 235 (2018). Counsel billed five hours between September 27, 2018, and September 30, 2018,

for "Research regarding claims, injuries, and vaccine injury court." ECF No. 88-2 at 1. This is a textbook example of the kind of time spent learning basic aspects of the Program that is non-compensable.

As previously noted, clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Such non-compensable tasks include "scheduling status conferences, organizing exhibits, preparing compact discs, revising a short motion after an attorney's review, and filing documents through the CM/ECF system." *Floyd v. Sec'y of Health & Hum. Servs.*, No. 13-556, 2017 WL 1344623, at *5 (Fed. Cl. Spec. Mstr. Mar. 2, 2017). Here, counsel billed for 15 hours of work performed by a paralegal between November 18, 2019, and November 20, 2019, for "Organizing, bates labeling, creating CS, and filing all Exhibits for Petitioner for Vaccine Compensation, and Statement of Completion" (also constituting unacceptable block billing). ECF No. 88-2 at 2. Further examples include a separate November 20, 2019, entry for 0.5 hours for "Filing Petition with Vaccine Court," *id.*, and six hours billed by a paralegal between April 15, 2020, and April 23, 2020, contained in one entry for "Procuring, organizing, and filing supplemental exhibits, corrected status report, and statement of completion," *id.*

All told, when considering the block billing practices and vague entries, questionable entries for tasks that took demonstrably less time than was billed, hours spent learning basic aspects of the Program and the law, and impermissibly billed clerical and secretarial time, a great number of the hours billed by Mr. Luckasevic and his paralegal are objectionable. While I recognize that this is Mr. Luckasevic's first, and perhaps only, case in this Program, failure to familiarize himself with and apply acceptable billing practices in the Program requires a reduction in fees. As previously noted, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See, e.g.*, *Broekelschen*, 102 Fed. Cl. at 728–29 (affirming the Special Master's reduction of attorney and paralegal hours). Due to counsel's overall block billing, billing for non-compensable tasks, and billing of excessive hours for tasks, the undersigned will reduce the overall award for fees by 10%.[4]

Petitioner is awarded **$58,110.12**[5] in attorneys' fees.

---

[4] Acknowledging that this is Mr. Luckasevic's first Program case, he is warned that failure to following the Guidelines for billing practices in the future will result in a larger reduction of fees.

[5] As noted above, the billing entries provided by Mr. Luckasevic are vague and unspecific. Several entries cover dates ranging over years. For those entries, because it is impossible to determine in which calendar year the work was performed, the lower year's rate will be awarded for the entire billing entry.

Additionally, as noted, the following hours are non-compensable and no compensation will be awarded: 1) five hours for Mr. Luckasevic from September 27, 2018, to September 30, 2018, spent researching basic aspects of the Vaccine Program; 2) 15 hours for Ms. DeUnger from November 18, 2019, to November 20, 2019, for various clerical or secretarial tasks; 3) 0.5 hours for Ms. DeUnger on November 20, 2019, spent filing the petition; and 4) six hours for Ms. DeUnger from April 15, 2020, to April 23, 2020, for various clerical or secretarial tasks. Also, the nine hours for Mr. Luckasevic on October 3, 2023, performing "Vaccine Hearing before the Court" will be reduced to five hours.

Mr. Luckasevic documented the following hours and the corresponding yearly rates will apply: 37.25 hours for 2018 for Mr. Luckasevic at $325 per hour and five hours for Ms. DeUnger for 2018 at $125 per hour; 1.25 hours for 2019 for Mr. Luckasevic at $335 per hour; 11 hours for Mr. Luckasevic for 2020 at $398 per hour; 32.6 hours for 2021 for Mr. Luckasevic at $422 per hour; 2.7 hours for Mr. Luckasevic for 2022 at $433 per hour; 62.5 hours for Mr.

### C. Reasonable Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Additionally, "a petitioner seeking reimbursement of expert costs must submit '(a) contemporaneous time sheets showing how many hours were billed on a specific task multiplied by a proposed hourly rate; and (b) any other information petitioner deems necessary to substantiate the reasonableness of the work for which reimbursement is being sought.'" *Ginsberg v. Sec'y of Health & Hum. Servs.*, 179 Fed. Cl. 107, 114 (2025) (citing RCFC 2d Supp. to App. B, Rule 3; *see also* RCFC 2d Supp. to App. B, Rule 1(a)(i)(B) ("Each individual task should have its own entry indicating the amount of time dedicated to that task. Time should be billed in increments of one-tenth of an hour.")). "The "'failure to document the claimed costs results in denial of that claim.'" *Id.* (quoting *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 205 (2009)).

Petitioner requests a total of $27,643.08 in costs on behalf of counsel. ECF No. 88-3 at 1. This amount represents costs associated with the following categories: 1) $513 for the hearing transcript; 2) $264 for the Court's electronic document platform, PACER; 3) $1,037 for various court fees, including the filing fee and costs associated with registering with the Vaccine Court; 4) $13,961 for medical records, including a record retrieval service; 5) $2,378.21 for travel costs, including airfare, lodging, and food; 6) $228.90 in USPS shipping costs; and 7) $385.97 for copying and postage costs; and 8) $10,825 for expert fees. This totals $29,593.08. However, counsel reports that he received a refund from OnPoint Legal Consulting, through whom petitioner sourced expert testimony, of $1,950. That brings the total request for fees to $27,643.08. Each category of cost will be addressed in turn.

First, the cost of $513 for the hearing transcript is well-documented and reasonable, and such costs are routinely granted. ECF No. 88-3 at 34. I grant this in full.

Second, the cost of $264 for fees associated with PACER is well-documented and reasonable. ECF No. 88-3 at 36. Such costs are routinely granted. I grant this in full.

Third, petitioner requests $1,037 for various court fees. This request includes $400 for the petition filing fee, ECF No. 88-3 at 22, $562 for a fee for admission to the Vaccine Court to practice, *id.* at 13, and $75 for three certificates of good standing from the Supreme Court of Pennsylvania, *id.* at 14. The filing fee for the petition is adequately documented and is routinely compensated. However, costs associated with seeking admission to the Court of Federal Claims are not compensable. *Castelein v. Sec'y of Health & Hum. Servs.*, No. 22-312V, 2025 WL 5286770, at *3 (Fed. Cl. Spec. Mstr. Apr. 21, 2025) ("Just as an attorney cannot bill the program to research admission to the Court of Federal Claims, attorneys will not be reimbursed for seeking admission to practice or any costs incurred thereto."). Therefore, I will award the $400 for the filing fee for the petition but I will not award the $637 for the admission fee and the certificates of good standing.

---

Luckasevic for 2023 at $464 per hour and 2.5 hours for Ms. DeUnger for 2023 at $125 per hours; and five hours for Mr. Luckasevic for 2026 at $560 per hour. The total of these hours is $64,566.80.

Applying the 10% reduction in fees assigned above, the total fees award comes to $58,110.12.

Fourth, petitioner requests $13,961[6] for costs associated with acquiring petitioner's medical records. Petitioner employed a records retrieval service, The MCS Group, for this task. While this amount is higher than is typical for most claims, due to the nature of this claim and petitioner's extensive medical history, the records were voluminous. Therefore, I award the costs for the medical records in full.

Fifth, petitioner requests $2,378.21 in costs associated with travel, including flights, accommodations, meals, and mileage. First, there is a total of $95.67 in mileage noted on a spreadsheet of costs with no corresponding documentation. Because these costs are not adequately documented, they are denied.

Next, counsel billed $359.90 for his flight on October 2, 2023, from Hilton Head, South Carolina to Washington, DC for the October hearing and $498.90 for his return flight from Washington, DC to Savannah, GA on October 3, 2023. Petitioner failed to provide the actual receipt for either of these flights, only a credit card billing statement confirming that this money was expended for this purpose. It is difficult to determine if the cost for these flights was reasonable or why counsel departed from and returned to South Carolina and Georgia respectively when his firm is located in Pittsburgh, PA, especially considering that "the Vaccine Program does not compensate for first-class airfare" or other luxury travel accommodations. *See, e.g.*, *Digerolamo v. Sec'y of Health & Hum. Servs.*, No. 16-920V, 2019 WL 4305792, at *4 (Fed. Cl. Spec. Mstr. June 28, 2019). In the future, counsel is cautioned to provide receipts documenting all his travel costs. Even so, the cost requested for these two flights will be awarded in full.

Mr. Luckasevic also requested as part of his travel costs a total of $204.59 for cab services, representing $13.79 for a cab service on October 2, 2023, and $190.80 for "Camelot Limousine LLC" on October 4, 2023. Neither of these were accompanied by documentation or receipts but were instead noted on a credit card billing statement. Nevertheless, the $13.79 expense is granted. However, the $190.80 for the limousine service is denied. From the unclear documentation, it appears that Mr. Luckasevic arrived in Washington, DC for the hearing on October 2, 2023, and departed on October 3, 2023. Thus, the limousine service does not appear to be related to his appearance at the hearing. Even if it was sufficiently related, "luxury car service costs are not reimbursable by the Vaccine Program." *See Rublaitus v. Sec'y of Health & Hum. Servs.*, No. 19-346V, 2020 WL 5637784, at *5 (Fed. Cl. Spec. Mstr. Aug. 20, 2020).

Finally, for meals and lodging, Mr. Luckasevic requests $835.03 for what appears to be a one-night stay at the Willard InterContinental hotel in Washington, DC the night of October 2, 2023, and a total of $384.12 for three meals over October 2 to 3, 2023. One of those meals appears to have cost $294.26 at Joe's Seafood, Prime Steak and Stone Crab restaurant. ECF No. 88-3 at 33. For reasonable rates for both meals and lodging, the Vaccine Program routinely uses the federal government's location-specific per diem amounts set by the U.S. General Services Administration.[7] *See, e.g.*, *Digerolamo*, 2019 WL 4305792, at *4; *Musabyemariya v. Sec'y of*

---

[6] The cost breakdown at ECF No. 88-3 at 1 notes a request of $13,961.10 for medical records. This appears to be a slight mathematical error. When adding the amounts on the spreadsheet of costs provided by petitioner, the total amount for medical records is $13,961.00, a decrease of $0.10.

[7] The per diem rates for each year can be found at https://www.gsa.gov/travel/plan-a-trip/per-diem-rates/per-diem-files.

*Health & Hum. Servs.*, No. 24-291V, 2026 WL 1971089, at *2 (Fed. Cl. Spec. Mstr. June 2, 2026). For 2023, in Washington DC for the month of October, the maximum daily amount for lodging was $257 and for meals was $79 per day. Thus, I award a total for meals and lodging of $415, representing $257 for a one-night hotel stay and $79 for each of October 2 and 3 for meals.

Sixth, petitioner requests $228.90 in UPS shipping costs. Such costs are routinely awarded. I find these costs reasonable and award them in full here.

Seventh, petitioner requests a total of $385.97 for copying and postage costs, with $379.95 for copying and $6.02 for postage. These costs are routinely awarded. I find these costs reasonable and award them in full here.

Eighth, and finally, petitioner requests $10,825 in expert fees, minus a $1,950 refund received from OnPoint Legal Services. That total comes to $8,875. Petitioner submitted one invoice from her expert Dr. Weber for $3,125, at a rate of $625 for five hours of work. ECF No. 88-3 at 32. The rest of the documentation for the expert fees requested is in the form of emails between counsel, Dr. Weber, and paralegal Ms. DeUnger, or in internal check request forms. *See id.* at 16, 27-29. Petitioner requests $3,750 for a retainer fee and an additional $2,000 for four hours of work by Dr. Weber at $500 per hour. Typically, "a flat hourly rate in the Vaccine Program is more appropriate, compared to the three different rates experts use for different activities," including reviewing records, drafting reports, and testifying at hearing. *Aycock v. Sec'y of Health & Hum. Servs.*, No. 19-235V, 2023 WL 8869423, at *10 (Fed. Cl. Spec. Mstr. Nov. 8, 2023). Nevertheless, and without ruling on the reasonableness of Dr. Weber's two hourly rates, in light of Dr. Weber's three expert reports and testimony at hearing, I find that the overall amount of $8,875 is reasonable.

In sum, I award the following costs to petitioner: 1) $513 for the hearing transcript; 2) $264 for PACER fees; 3) $400 for the filing fee; 4) $13,961 for medical records; 5) $1,287.59 in travel costs; 6) $228.90 in costs for shipping; 7) $385.97 for copying and postage costs; and 8) $8,875 for costs associated with petitioner's expert Dr. Weber.

I award a total of $25,915.46 in costs.

## III. Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED in part**. Petitioner is hereby awarded a **total of $84,025.58**, representing $58,110.12 in attorneys' fees and $25,915.46 in costs, **to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

The Clerk of Court is directed to enter judgment in accordance with this decision.[8]

**IT IS SO ORDERED.**

[8] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).

**s/Mindy Michaels Roth**
Mindy Michaels Roth
Special Master